UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LJUBICA STARCEVIC,**

      **Plaintiff,**             **CIVIL ACTION NO. 08-13128**

  **vs.**

**COMMISSIONER OF**       **DISTRICT JUDGE MARIANNE O. BATTANI**
**SOCIAL SECURITY,**        **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:** Defendant's Motion for Summary Judgment (docket no. 25) should be GRANTED, Plaintiff's Motion For Summary Judgement (docket no. 24) should be denied in part and dismissed in part and the instant case dismissed.

\*\*\*

**II.**    **PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income (SSI) with a protective filing date of May 17, 2002 alleging that she became disabled on July 14, 2001 due to reactive airway disease, bilateral carpal tunnel syndrome, asthma, hypertensive cardiovascular disease and bunions. (TR 50, 87-89, 459). The Social Security Administration denied benefits. (TR 49-53). A requested *de novo* hearing was held on August 30, 2005 and continued on November 15, 2005 before Administrative Law Judge (ALJ) Mary Susan Connolly. (TR 407, 422). At the time of the hearings Plaintiff also had pending with the SSA an appeal of her denial for Childhood Disability Benefits (CDB) filed on May 12, 2003 in which she alleged an onset of disability prior to age twenty-two on the basis of a deceased parent's benefit. (TR 272-73). The ALJ held the hearings on both pending

claims. The ALJ subsequently ruled in Plaintiff's favor on the SSI application and found that Plaintiff was disabled beginning August 1, 2002 at least through the date of the ALJ's January 26, 2006 SSI decision. (TR 45-48, 459-464). The ALJ denied Plaintiff's CDB application finding that Plaintiff was not under a disability at any time through the attainment of her twenty-second birthday. (TR 48, 464). The Appeals Council declined to review the ALJ's decision on the CDB application. (TR 6-8). The Appeals Council reviewed the ALJ's SSI decision and found that Plaintiff became disabled on an earlier date, May 17, 2002. (TR 28-29). Plaintiff commenced the instant action for judicial review. (Docket no. 1). The parties filed Motions for Summary Judgment.

### III.  PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.  Plaintiff's Testimony & Reports

Plaintiff was forty years old at the time of the November 2005 hearing. (TR 427). Plaintiff finished high school and has an associates degree. (TR 433). Plaintiff had no significant work in the fifteen years prior to the hearing and was receiving food stamps and medical aid at the time of the hearing. (TR 434). Plaintiff testified that she suffers from carpal tunnel syndrome in both hands which results in numbness and pain. (TR 434-36). Plaintiff wears braces at night but if she wears them during the day, they restrict her driving and writing. (TR 436). Plaintiff reports neck pain as a result of multiple car accidents and recently she had an additional incident in a doctor's office when an examination table collapsed while she was on it. (TR 437-38). Plaintiff alleges extreme pain following that incident. (TR 438). Plaintiff also alleges back pain. (TR 437-38). Plaintiff testified that she cannot lift on a repetitive basis and she drops everything. (TR 439). Plaintiff testified that she has bunions on both feet. (TR 448).

Plaintiff also testified that she has asthma or a condition which treatment providers have

identified as reactive airway disease. (TR 440). Plaintiff testified that she takes medications Verapamil and Triamterene/Hydrochlorothiazide for high blood pressure. (TR 441). Plaintiff has taken Motion, Tylenol or Advil for pain in the past, however she describes that they disrupt her stomach and do not relieve her pain. (TR 441). Plaintiff has suffered multiple and recurring ear infections and has menstrual issues which manifest in excessive bleeding. (TR 442-445). Plaintiff testified that all of these problems prevent her from working, including the excessive bleeding which causes weakness and pain. (TR 444, 447). Plaintiff testified that she had testing for the menstrual problems in California in the year 2000 and submitted copies of those records to the ALJ. (TR 445). Plaintiff testified that due to excruciating pain she has to change positions throughout the day from sitting to lying down. (TR 451).

**B.     Medical Evidence**

As an initial matter, the Court has reviewed the record in full. The Court will limit its discussion of the medical evidence herein because, as set forth below, Plaintiff's appeal of the ALJ's and Appeals Council's SSI decisions was untimely. The Court will incorporate medical evidence here as background and below to the extent that any of the evidence relates to Plaintiff's CDB claim.

Plaintiff treated at emergency rooms in July 2001 after her alleged exposure to a chemical leak which she reports caused coughing, pain, burning and shortness of breath. (TR 100-105,139). On July 15, 2001 Plaintiff reported to Henry Ford emergency room with complaints of a burning throat and chest. (TR 162-69). An x-ray revealed a normal appearance of the chest. (TR 167). Plaintiff again reported to Henry Ford Hospital's emergency department on July 23, 2001 with complaints of weakness in the arms, pain in the shoulder and slurred speech and again reported her exposure to a chemical leak. (TR 177-78). The record shows that Plaintiff refused all blood draws

and left the emergency department before the bloodwork or x-rays were done. (TR 178). In August 2001 Plaintiff underwent a consultation at Wayne State University for an evaluation of her pulmonary symptoms. (TR 138-39, 153-54). Ayman Soubani, M.D., noted that the examination was unremarkable and he was ordering a chest x-ray and further pulmonary function tests. (TR 139). An August 10, 2001 chest x-ray showed that the lung fields were "clear without evidence of confluent infiltrate, pleural effusion or pneumothorax." (TR 156, 159). In September 2001 the x-ray and pulmonary function tests were within normal limits. (TR 145). During this time Plaintiff also treated at Harper University Hospital and the Detroit Medical Center, Providence Hospital and St. John Health System. (TR 148-152, 155). A September 10, 2001 chest x-ray showed no infiltrate, mass or pleural effusion, but revealed a mild degenerative change in the thoracic spine. (TR 152).

The record also shows that Plaintiff reported to the emergency room at Torrance Memorial Medical Center in 2000 for heavy vaginal bleeding. (TR 363-70). Plaintiff has been treated for bilateral carpal tunnel syndrome and was prescribed wrist splints in July 2002. (TR 187). Plaintiff has been treated for recurring ear infections and/or impaction since March 2002. (TR 189-92, 194). On March 10, 2003 Plaintiff was diagnosed with recurrent otitis externa and reflux laryngitis. (TR 226).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

With respect to Plaintiff's application for SSI, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2002 and although she suffered from reactive airway disease, carpal tunnel syndrome, asthma and hypertensive cardiovascular disease, all severe impairments, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 463). The ALJ found that Plaintiff's allegations regarding her

ability to work are credible. The ALJ found that Plaintiff can perform a reduced range of sedentary work because she is limited to occasional reaching, handling and fingering, she requires a clean work environment and she has frequent absences due to dizziness and other physical complaints more than four times per month. (TR 463). The ALJ found that Plaintiff has no past relevant work, she is a younger individual between the ages of 18 and 44 as of August 1, 2002, she has at least a high school education and an unskilled work background. The ALJ concluded, based on the Vocational Expert's testimony[1], that Plaintiff cannot make an adjustment to work that exists in significant numbers in the national economy and Plaintiff is disabled. (TR 463). The Appeals Council concluded that Plaintiff became disabled on May 17, 2002, earlier than the ALJ's August 1, 2002 date. (TR 28, 463).

With respect to Plaintiff's claim for CDB, the ALJ determined that Plaintiff meets the non-disability requirements for CDB set forth in section 202(d) of the Social Security Act and is the child of wage-earner Margaret Starcevic. (TR 48). The ALJ concluded that although Plaintiff had not engage in substantial gainful activity since the alleged onset date, she had no medically determinable impairment prior to the age of twenty-two and the Plaintiff was not under a disability for purposes of entitlement to CDB at any time through the attainment of her twenty-second birthday. (TR 48).

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

---

[1] The ALJ properly elicited testimony from the VE based on a hypothetical question containing Plaintiff's limitations which the ALJ found credible and consistent with Plaintiff's Residual Functional Capacity. (TR 450). The Court need not address this issue in detail because it is related to Plaintiff's SSI application and hearing and, as set forth below, Plaintiff's appeal of the ALJ's and Appeal Council's SSI decisions was untimely and should be dismissed.

final decisions:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .

Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts").

**B.     Analysis**

*1.     Scope Of The Court's Review*

Despite raising a litany of issues outside of the purview of the Court's review in this action under 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment and Reply ultimately ask the Court to "[r]emand the cases back to SSA for further ALJ hearings and Order SSA to follow their own procedures, rules and regulations."[2]  (Docket no. 24, 28).  Plaintiff is proceeding in forma pauperis in this matter and her Application for Appointment of Counsel was denied on July 24, 2008.  (Docket no. 5, 6).  The Court is mindful that it is required to construe Plaintiff's pro se pleadings liberally, and hold them to "less stringent standards than formal pleadings drafted by lawyers."  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  In part, Plaintiff seeks to appeal the Appeal Council's favorable decision dated December 14, 2007, which affirms the ALJ's favorable finding of disability in Plaintiff's SSI claim.  (TR 28-29, 459-64).  Plaintiff also seeks to appeal the ALJ's unfavorable decision denying her CDB claim.  (TR 45-48).

*2.     Plaintiff's Appeal Of The SSI Application Is Untimely*

With respect to Plaintiff's appeal of the December 14, 2007 SSI decision, Plaintiff's filing with this Court was untimely. (TR 28-29). "[I]f the Appeals Council grants review of a claim, then

---

[2] Plaintiff's Complaint and Motion for Summary Judgment raise a multitude of issues, including allegations that her lawyer committed fraud and tricked her into signing blank SSA forms, that her lawyer operated his law office from an office that was not in compliance with city ordinances and that her attorney breached his contract(s) with her. (Docket nos. 1, 24). Plaintiff makes allegations that SSA employees failed to follow their own procedures, rules and regulations and alleges that her file contains false and fraudulent documents. (Docket no. 1, 24, 28). Plaintiff also alleges that a SSA worker wrongfully indicated that Plaintiff's "Request for Hearing By Administrative Law Judge" form was timely received by the office and then the worker disposed of the post-marked envelope. (Docket no. 24). Plaintiff alleges that the Request for Hearing was untimely sent.

the decision that the Council issues is the Commissioner's final decision." *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). If the Appeals Council denies a request for review, the ALJ's decision becomes the final decision of the Commissioner which is subject to judicial review. *See* 20 C.F.R. §416.1481; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). A claimant "may file an action in a Federal district court within 60 days after the date [claimant] receive[s] notice of the Appeals Council's action." 20 C.F.R. § 416.1481. An individual is presumed to have received "notice" of the Commissioner's decision five days after the mailing of such notice. 20 C.F.R. §§ 416.1481, 416.1401, 422.210(c).

Here, the Appeals Council's Notice of Fully Favorable Decision regarding Plaintiff's application for SSI benefits is dated December 14, 2007[3]. (TR 25-29). On February 26, 2008 the Appeals Council granted Plaintiff's request for an extension to file a civil action with the Court "for 30 days from the date you receive this letter. We assume that you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period." (TR 22). On May 16, 2008 the Appeals Council denied a second request by Plaintiff for more time to file a civil action. (TR 10). As set forth in the May 16, 2008 Appeals Council letter, the December 14, 2007 Appeals Council Decision and the extension denial applied to Plaintiff's SSI claim and Plaintiff's request for review of the CDB decision remained pending. (TR 10). Therefore, Plaintiff's Complaint with respect to the SSI decision was due on April 1, 2008, based on the February 26, 2008 letter. (TR 22).

---

[3]The Notice of Appeals Council Decision Fully Favorable states:
You have 60 days to file civil action (ask for court review).
The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period. (TR 26).

-8-

It is well-settled in the Sixth Circuit "that the 60-day time limit presents a jurisdictional issue, and that if the limitation period is not satisfied the case must be dismissed for lack of subject matter jurisdiction." *Peel v. Sec'ty of Health and Human Servs.*, 793 F.2d 1293 (6th Cir. 1986) (plaintiff failed to submit evidence supporting assertion that he received the Appeals Council's notice two days later than the date presumed).

According to the Court's docket, Plaintiff's complaint was filed on July 21, 2008, well after the deadline to file a civil action with respect to the Appeals Council's SSI decision as set forth in the Appeals Council's February 26, 2008 letter. (Docket no. 1, TR 22). Plaintiff's request for an extension of time was denied and she has not shown that she failed to receive the notice later than the date presumed. Therefore, the Court should dismiss her Motion For Summary Judgment in part as to the favorable SSI decision.

## 3.     *The ALJ's Decision on Plaintiff's Request For Childhood Disability Benefits Is Supported By Substantial Evidence*

Plaintiff asks for remand of the ALJ's decision denying Plaintiff's application for CDB. Plaintiff filed an application for CDB on May 12, 2003 alleging that she was disabled since December 15, 1977, prior to turning twenty-two. (TR 272-73). Plaintiff sought entitlement under her deceased mother's social security account. (TR 272). The application was denied initially and upon reconsideration. (TR 45). The ALJ denied Plaintiff's application finding that, although Plaintiff met the non-disability requirements for Childhood Disability Benefits, is the child of her wage-earner mother and had not engaged in substantial gainful activity since her alleged onset date, Plaintiff had no medically determinable impairment prior to the age of twenty-two and Plaintiff was not under a disability at any time through the attainment of her twenty-second birthday. (Docket no. 48). Therefore, Plaintiff was not entitled to Childhood Disability Benefits under the Social

Security Act. (TR 48). On May 16, 2008 the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision on her CDB claim. (TR 6-8).

To be eligible for childhood disability benefits the Plaintiff must establish that she was under a disability that began before age twenty-two and was continuously disabled from the date of her twenty-second birthday through the date that she applied for benefits. *See* 42 U.S.C. § 402(d)(1); *see also Futernick v. Richardson*, 484 F.2d 647, 648 (6th Cir. 1973); *Baker v. Barnhart*, 101 Fed. Appx. 992 (6th Cir. June 15, 2004).

The ALJ determined that the record contains no evidence of a medical impairment before mid-2001. (TR 46). The Court agrees. A review of the complete record shows no medical evidence to support a finding of a medical impairment prior to 2001. Plaintiff's date of birth is December 31, 1964 and she was forty years old at the time of the November 15, 2005 hearing. (TR 427). As pointed out by the ALJ, the majority of the testimony and reports in the record allege disability since 1996, ten years past her twenty-second birthday. (TR 47).

In Plaintiff's disability report from August 2002 Plaintiff alleges that her illnesses, injuries or conditions first began to bother her in approximately 1996 and she became unable to work on July 14, 2001. (TR 92-105). Plaintiff alleges that she is limited in her ability to work because she suffers from reactive airway disease, hypersensitivity pneumonitis, carpal tunnel syndrome, additional nerve injuries of the hands and feet, bunions and high blood pressure. (TR 93). Plaintiff underwent an independent medical evaluation on June 16, 2005 and her medical records were reviewed. (TR 332). It was noted that her hypertension started six years prior to the exam, she had chest pain for four years, exposure to a chemical in July 2001 and a 2002 diagnosis of bilateral carpal tunnel syndrome. (TR 332-333). Plaintiff also reported that a chest x-ray in July 2001 showed a perihilar mass, but

x-rays taken after that were negative. Plaintiff also has a history of neck and low back pain and fractured toes and bunions. (TR 332). The examiner, S. L. Schlucter, M.D., FACP, diagnosed Plaintiff with possible bilateral carpal tunnel syndrome and hypertension, rhythm disturbance, history of possible mild bronchial asthma or mild reactive airway disease and neck and low back pain. (TR 333).

Plaintiff attended a series of examinations and emergency room visits beginning in July 2001 for chemical inhalation. (TR 94-102, 106-113, 118-119). In an Electromyography Report from an examination in January 2004 with James F. Selwa, M.D., and X. Guo, M.D., the doctors reported that Plaintiff had complained of numbness in her hands and foot for the prior eight years. (TR 377).

In March 2005 Plaintiff reported that her dizziness had been going on since 1996. (TR 374-75). The record shows that Plaintiff alleges that she suffered dysfunctional uterine bleeding which start when she was twelve years old and progressively worsened until she had menstrual bleeding for three weeks of each month by the age of twenty. (TR 398). Plaintiff testified to this fact at the hearing, too, although there are no medical records to support the allegation of this early onset. (TR 444-45). Plaintiff alleges that she has a receipt showing that she paid a cash for a 1989 doctor's appointment related to this condition. (TR 398, 430, 448). There is no allegation that the receipt would provide any further medical evidence related to the onset of this condition or its severity. The record shows that Plaintiff visited an emergency room in May 2000 for this condition, but again, the record does not support an onset date fourteen years prior. (TR 363-70). Substantial evidence supports the ALJ's finding that there is no objective medical evidence to establish the existence of any physical or mental impairment prior to age twenty-two and her subsequent denial of Plaintiff's CDB claim.

*4.      Remaining Issues Regarding Plaintiff's SSI Claim And The Record Before The Court*

Plaintiff's Motion For Summary Judgment and Reply raises four specific issues related to the ALJ's SSI decision and findings. The statements and evidence which Plaintiff puts at issue appear only in the ALJ's decision on Plaintiff's SSI claim. Although that appeal is untimely before this Court and should be dismissed, it is worth addressing Plaintiff's issues herein while the record is before the Court.

First, Plaintiff asks the Court to order SSA to strike the statements in the record regarding whether Plaintiff takes the medication Maxzide. (Docket nos. 23-24). Plaintiff argues that the ALJ erred in the SSI decision by failing to specify that Plaintiff takes the generic equivalent of the medication Maxzide. Plaintiff has failed to show how this allegation is material to the ALJ's favorable disposition of her SSI application. Despite Plaintiff's allegation that the Maxzide is generic, the medical record contains multiple notations that Plaintiff's medications included "Maxzide" and the record does not specify a generic. (TR 177, 228, 393-96). Therefore, the ALJ's finding on this issue is supported by substantial evidence and to the extent it was error, it was harmless error.

Next, Plaintiff asks the Court to strike the ALJ's statements in the SSI decision that she observed that Plaintiff contends with a mental impairment and was unstable during the hearing. (TR 23-24). The ALJ did not err in noting these observations. "[A]n ALJ is charged with the duty of observing a witness's demeanor and credibility." *See Walters*, 127 F.3d at 531. Furthermore, the record contains evidence, including Plaintiff's testimony and her own report, that her treatment provider wanted to start her on an anti-depressant medication. (TR 109, 449). Plaintiff testified that one of the doctors wanted to her to take the anti-depressant Amitriptyline, as Plaintiff describes it,

-12-

to "alter" her mind so she would not feel the pain as badly and Plaintiff "wanted nothing to do with that." (TR 449). The ALJ did not err in exploring this evidence at the hearing and recording her observations of Plaintiff's demeanor in her decision.

Finally, Plaintiff requests that references to Torrance Memorial Medical Center on December 31, 2004 be stricken from the ALJ's SSI decision because she was not at Torrance Memorial Medical Center on December 31, 2004. (Docket no. 24). She also asks the Court to Order SSA to produce the emergency medical records for this date. (Docket no. 24). The ALJ's SSI decision states that "[e]mergency room records from Torrance Memorial Medical Center dated May 8, 2000 through December 31, 2004 indicate she was treated for complaints of vaginal bleeding and passing clots. The examiner noted a history of irregular periods and polycystic ovary. (Exhibit 15F)." (TR 460). The records from Torrance Memorial Medical Center are all dated May 8, 2000. (TR 263-370). It appears that this mistake on the ALJ's part may have occurred because the first page in the series of documents gives Plaintiff's birthdate as "12/31/64" and is slightly unclear and could be construed as "12/31/04." (TR 363). Other than the incorrect date, the Torrance Memorial Medical Center records are as set forth in the ALJ's SSI decision. This is harmless error. For this reason, the Court should Deny Plaintiff's Motion for Production Of Documents as moot. (Docket no. 24). The ALJ's statement does not refer to records other than those appearing in the transcript and the ALJ simply made an error in reading or otherwise recording the date in the decision. The ALJ's remaining statements related to Torrance Memorial Medical Center are supported by substantial evidence.

## **CONCLUSION**

The Commissioner's decision on Plaintiff's Application for Childhood Benefits is supported

by substantial evidence, was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's appeal of the Commissioner's Final Decision on her application for SSI was untimely and should therefore be dismissed. Accordingly, Defendant's Motion for Summary Judgment (docket no. 25) should be GRANTED. Plaintiff's Motion For Summary Judgment And Motion For Order For Demand Of Production Of Documents And Request To Assign Attorney To Defendant (docket no. 24) should be DISMISSED in part and DENIED in part as follows:

    a. Plaintiff's Motion For Summary Judgement should be DISMISSED in part as to the Commissioner's decision on Plaintiff's SSI claim for lack of subject matter jurisdiction because it was untimely;

    b. Plaintiff's Motion For Summary Judgment as to the Commissioner's decision on Plaintiff's CDB claim should be DENIED because the decision was supported by substantial evidence; and

    c. Plaintiff's Motion For Order For Demand Of Production Of Documents should be DENIED[4].

The instant Complaint should be DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes

---

[4] Plaintiff's Request To Assign Attorney To Plaintiff as set forth in her Motion For Summary Judgment is DENIED in a separate Opinion And Order of the Undersigned.

a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 15, 2009        s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Ljubica Starcevic and Counsel of Record on this date.

Dated: June 15, 2009        s/ Lisa C. Bartlett
                            Courtroom Deputy